UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN MARTINI, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No.: 2:05-CV-86 PS |
| v. ) | |
| ) | |
| MARIS & SON, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Maris & Son, Inc.'s Motion to Dismiss and to Compel Arbitration. [Doc.9]. Because it is apparent from the face of the Complaint that this is an action for collection of delinquent contributions brought pursuant to Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145 ("ERISA"), Maris & Son, Inc.'s motion is **DENIED.**

**I. BACKGROUND**

Plaintiffs are funds established pursuant to trust agreements and collective bargaining agreements between the various funds, unions, and employers (hereinafter the "Funds"). As a member of the Northwestern Indiana Roofing Contractors Association, Inc., Maris & Son, Inc. ("Maris") is bound to certain collective bargaining agreements with Local Union 26 of the United Union of Roofers and Waterproofers, and Allied Workers (the "Roofers Union"). Pursuant to these collective bargaining agreements, Maris must pay specified wages and make periodic contributions to the Funds. The Plaintiffs allege that Maris has failed to make payments to the Funds. To date, Maris has refused to submit to the audit and, therefore, at this

1

time, the Plaintiffs are unable to specify the total amount of the delinquency. Based on the limited records produced, Maris failed to make payments totaling $36,880.16 to various funds. On March 4, 2005, Plaintiffs brought suit against Maris alleging that Maris had violated Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145 ("ERISA").

On April 18, 2005, Maris moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as well as to compel arbitration. Maris asserts that Plaintiffs' claims are not true ERISA claims, but rather are an attempt to litigate a jurisdictional dispute between two unions – the Roofers Union and the United Brotherhood of Carpenters and Joiners of America, Indiana/Kentucky Regional Council of Carpenters (the "Carpenters Union").

The collective bargaining agreement attached to the Plaintiff's Complaint as Ex. A contains the following relevant provisions:

<div style="margin-left:2em">

ARTICLE 16
ADJUSTMENT AND ARBITRATION

**Section 1** All complaints, grievances or disputes with reference to the provisions, interpretations or enforcement of this Agreement, which cannot be settled directly by the Employer and the Union, within fifteen days after they have arisen, shall be referred to the Joint Adjustment Board. . . which shall render a decision . . . which shall be final and binding upon all parties concerned.

\* \* \*

**Section 3** There shall be no cognizance taken of a grievance filed more that ninety (90) days after the date of occurrence

</div>

(Complaint at Ex. A, p. 25-26) (emphasis in original).

<div style="text-align:center">

Article 20
Pension Fund and Welfare Fund

</div>

2

\* \* \*

> **Section 3**  In the event an employer shall become delinquent in or fail to make the payment or contributions as required herein, such delinquency or failure shall not be subject to Arbitration and the local Union may consider delinquency or failure as an immediate breach of the Collective Bargaining Agreement.

(Complaint at Ex. A, p. 34) (emphasis in original).

<div align="center">Article 22<br>Failure to Comply</div>

\* \* \*

> **Section 5**  Nonexclusivity of Remedies  The remedies provided for this Agreement with respect to the collection of amounts due to be paid or transmitted including costs incurred in the collection of delinquent moneys . . . shall not be exclusive of any other remedies by way of suit in law or in equity or otherwise and the Union and the Funds specifically reserve any and all alternative remedies.

(Complaint at Ex. A, p. 22) (emphasis in original).

## II.  DISCUSSION

**A.**     **Standard of Review**

In considering a motion to dismiss, a district court must regard all well-pleaded facts as true, looking at them in a light most favorable to the plaintiff.  *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).  A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief."  *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 694 (7th Cir. 1994) (*citing Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)).   Thus, the Court will not grant a motion to dismiss for failure to state a

claim unless the complaint is self-defeating.  *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 555 (7th Cir. 2001).

Further, while the Court may consider exhibits attached to a complaint in its 12(b)(6) ruling, *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988), the Court may not consider matters outside of the pleadings without converting the motion to dismiss to a motion for summary judgment.  *Wilkow*, 241 F.3d at 555.

**B.**     **Matters Outside the Complaint**

Maris's motion to dismiss pertains almost entirely to matters outside of the Complaint.  First, Maris introduces facts – without affidavit or other support – to raise the specter of a "jurisdictional dispute" between the Roofers Union and the Carpenters Union.  These facts are entirely outside the four corners of the Complaint and, thus, are not properly before the Court.  *See Wilkow*, 214 F.3d at 555.  The Plaintiffs addressed the alleged "jurisdictional dispute" argument in their response brief.  Nevertheless, we decline to treat the Plaintiff's motion as a motion for summary judgment and, therefore, exclude the facts pertinent to the alleged "jurisdictional dispute" from our analysis.  We express no opinion as to the parties' legal arguments on this issue and nothing in this order shall preclude either party from bringing a properly supported motion for summary judgment on this issue should they choose to do so.

**C.**     **The Court Has Jurisdiction Over the Complaint**

Maris first moves to dismiss under 12(b)(1) arguing that this Court lacks jurisdiction over the Plaintiffs' claims.  We disagree.  29 U.S.C. 185 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United

> States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.  Moreover, the Complaint alleges ERISA violations and, accordingly, presents a federal question vesting jurisdiction in this Court pursuant to 28 U.S.C. § 1331.   As such, we have jurisdiction over Plaintiffs' claims and Maris's Motion pursuant to 12(b)(1) is DENIED.

**D.**     **The Collective Bargaining Agreement Does Not Require Arbitration**

Maris next asserts that the collective bargaining agreement contains a provision which mandates the arbitration of this dispute.  However, as the Plaintiffs correctly note, the parties to this action are not the true parties to the contract.  Instead, they are one party to the contract (Maris) and a third-party beneficiary to the contract (the Funds).  Accordingly, the question we must answer is whether the relevant trust fund agreements and collective bargaining agreements demonstrate an intent to arbitrate.

Our analysis is controlled by the approach adopted in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984).  *Pipefitters' Welfare Fund, Local Union 597 v. Mosbeck Indus'l. Equip., Inc.*, 856 F.2d 837, 839 (7th Cir. 1988).  In *Schneider,* the Supreme Court considered the following question: Under what circumstances must a trust fund arbitrate a contribution dispute? *Schneider*, 466 U.S. at 372.  The Court concluded that there was not a presumption of arbitrability, but rather, courts must determine whether "the relevant trust fund agreements and collective bargaining agreement [demonstrate] an intent to arbitrate." *Pipefitters*, 856 F.2d at 840.  We complete this analysis by carefully examining the pertinent trust and collective bargaining agreements.  *Id.*

The CBA clearly expresses an intent *not* to subject contribution claims such as the one in this case to arbitration.  The CBA addresses arbitration in Article 16.  It provides:

5

> Section 1: All complaints, grievances or disputes with reference to the provisions, interpretations or enforcement of this Agreement, which cannot be settled directly by **the Employer and the Union**, within fifteen days after they have arisen, shall be referred to the Joint Adjustment Board. . . which shall render a decision . . . which shall be final and binding upon all parties concerned.

(Complaint at Ex. A) (emphasis added). However, as noted above, the present dispute is not between the employer and the union, but rather the employer and the funds. Indeed, even if it were, Article 20, Section 3 specifically exempts contribution claims from arbitration. It provides:

> In the event an Employer shall become delinquent in or *fail to make the payment or contributions* as required herein, *such delinquency or failure shall not be subject to Arbitration* and the local Union may consider such delinquency or failure as an immediate breach of the Collective Bargaining Agreement.

(Complaint at Ex. A) (emphasis added). Further, Article 22, Section 5 provides:

> The *remedies provided for this Agreement with respect to the collection of amounts due* to be paid or transmitted including costs incurred in the collection of delinquent moneys . . . *shall not be exclusive of any other remedies by way of suit in law or in equity* or otherwise and the Union and the Funds specifically reserve any and all alternative remedies.

(Complaint at Ex. A) (emphasis added). As such, it appears clear that the CBA does not intend that the Plaintiffs are required to arbitrate their claim for the collection of unpaid fund contributions.

6

Nor does the Trust Fund Agreement appear to intend arbitration.[1] The Trust Fund Agreements clearly provide the Plaintiffs with the right to institute a direct *legal action* for the collection of unpaid contributions under the Funds.  (See Plf. Resp. at 9-11).

Nevertheless, Maris tries to wiggle out from under this obvious conclusion by relying on its "jurisdictional dispute" argument.  We need only reiterate that the question of a potential jurisdictional dispute is well outside the four corners of the complaint and, therefore, not before the Court today.

Moreover, to the extent we construe Maris's arguments regarding arbitration as a separate motion to stay and compel arbitration, we have not received any sworn statements, testimony, or documents supporting Maris's version of the facts.  All we have to consider are the unsupported arguments of counsel.  Our ruling today is not intended to foreclose Maris from re-raising the issue of arbitration if, during the course of discovery, Maris can present the Court with facts, supported by affidavit or other evidence, that this matter is truly a jurisdictional dispute.  However, we are unable to conclude that this is the case based on the unsupported motion presently before the us.

---

[1]Although the Trust Fund was not attached to the complaint and is, therefore, technically outside the four corners of the Complaint, we are permitted to consider its provisions because it is a document integral to Plaintiff's claim and incorporated into the CBA which is appended to the Complaint.  *See Lincoln Nat. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Securities Corp.,* 9 F. Supp. 2d 994, 997 (N.D. Ind. 1998) ("A document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).

**E.      The 90-Day Limitation Period Does Not Bar Plaintiffs' Claims**

Finally, Maris argues that the terms of the dispute resolution procedures in the CBA create a 90-day statute of limitations for the Plaintiffs claims. Maris concludes that the Plaintiffs' claims are late and, therefore, barred as a matter of law.

Ordinarily, a statute of limitations is an affirmative defense. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Accordingly, the Court may only dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(6) for statute of limitations violations where the matter is indisputably time-barred. *Id*.

In this case, we cannot conclude that any of the Plaintiffs' claims are indisputably time-barred. First, and most importantly, we question the application of the 90-day limitation period under which Maris seeks to bar Plaintiffs' claims. The 90-day limitation is contained in Article 16, discussed above, which applies to claims between employers and unions. As previously noted, Plaintiffs are not unions, but rather are funds. We also concluded above that the CBA clearly indicates an intent not to subject ERISA contribution claims to arbitration. Indeed, it specifically exempts ERISA contribution claims from arbitration.

Maris has not cited, nor are we aware of, any law under which we must apply the statute of limitations period contained in one part of a contract addressing a particular type of claim (i.e. a grievance for a CBA violation between employer and union) to a different type of claim addressed in a wholly separate contract section (i.e. claim to collect ERISA contributions brought by the Funds). Indeed, the rules of contract construction dictate the opposite result. *See Mid-states Gen. & Mech. Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 431 (Ind. App. 2004) ("The court will make all attempts to construe the language in a contract so as not to

render any words, phrases, or terms ineffective or meaningless . . . The court must accept an interpretation of the contract that harmonizes its provisions as opposed to one that causes the provisions to be conflicting.") (internal citations omitted).  Because the 90-day limitation period is contained in the Section specifically addressing arbitration, it simply does not make sense to also apply it to suits brought to collect contributions which are exempted from arbitration in Article 20 and separately addressed in Article 22.  Had the parties intended to apply the 90-day statute of limitations to ERISA collections claims, that limitation would have been placed in Articles 20 or 22.

We also note that even if the 90-day time-bar did apply to ERISA collection claims, the plaintiffs suggest that Maris's failure to make contributions to the plan was a continuing violation which is not limited to a single point in time.  Although little has been done by either side to develop this argument, it is a reasonable position which would preclude dismissal under Fed. R. Civ. P. 12(b)(6).

Finally, to the extent that Maris relies on its position that this dispute is not truly an ERISA collection action, but rather some type of jurisdictional dispute, we once again remind Maris that such a position relies on facts well outside the four corners of the Complaint and, therefore, is not properly before the Court for our consideration.

### III.  CONCLUSION

For the foregoing reasons, Defendant Maris & Son, Inc.'s Motion to Dismiss and to Compel Arbitration [Doc. 9] is **DENIED**.  The denial of Maris's motion to compel arbitration is without prejudice.  Should Maris obtain specific facts to support its "jurisdictional dispute" theory, it may re-raise the arbitration issue in a properly supported motion.

**SO ORDERED**.

ENTERED: July 26, 2005                         s/ Philip P. Simon
                                               PHILIP P. SIMON, JUDGE
                                               UNITED STATES DISTRICT COURT